IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GS HOLISTIC, LLC, | |
| Plaintiff, | |
| v. | Case No. 1:23-cv-04717 |
| JOHNNY VAPES, INC d/b/a JOHNNY VAPES INC and AYAZ AHMED, | Judge Nancy L. Maldonado |
| Defendants. | |

**CORRECTED MEMORANDUM IN SUPPORT
OF STATUTORY DAMAGE AWARD**
(Corrected as to Filer)

The Plaintiff brings this motion for the entry of default judgment in a sum certain, and for an award of statutory damages under the Lanham Act, 15 U.S.C. § 1114 in the amount of $150,000.00**.**

**Standards to be Applied on Default Judgment**

Generally, "[t]here are two stages in a default proceeding: the establishment of the default, and the actual entry of a default judgment." *In re Catt,* 368 F.3d 789, 793 (7th Cir.2004). This two-step process is outlined in Rule 55(a) (entry of default) and Rule 55(b) (default judgment) of the Federal Rules of Civil Procedure. "Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true." *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.,* 722 F.2d 1319, 1323 (7th Cir. 1983). The defaulting party cannot contest the fact of his liability unless the entry of default is vacated under Rule 55(c). *See Thomson v. Wooster,* 114 U.S. 104 (1885); *see also* Fed. R. Civ. P. 8(d) ("Averments in a pleading to which a responsive pleading is required ... are admitted when not denied in the responsive pleading.").

When default is entered, "facts alleged in the complaint may not be contested" *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994) (citing Fed. R. Civ. P. 8(d)), and "it is established, as a

1

matter of law, that Defendants are liable to plaintiff as to each cause of action alleged in the complaint." *Id.* Plaintiff submit the Certification of Ryan S. Fojo in support of the facts showing default and stating court costs expended. See Exhibit A.

**2. Facts Pled in the Complaint and Deemed Admitted**

As noted above, all allegations of the Complaint are deemed admitted due to the entry of default. The allegations alleged in this case establish all of the necessary elements of Plaintiff's claims for: (i) willful trademark infringement of the Stündenglass trademarks in violation of 15 U.S.C. §§ 1114; (ii) trademark counterfeiting of the Stündenglass trademarks in violation of 15 U.S.C. §§ 1116(d); and (iii) willful trademark infringement in violation of 15 U.S.C. § 1125(a).

A. *The "Stündenglass" Trademarks and Plaintiff's Business.*

For approximately two years, the Plaintiff has worked to distinguish the Stündenglass brand as the premier manufacturer of glass infusers by emphasizing the brand's unwavering use of quality materials and focusing on scientific principles which facilitate a superior smoking experience. Compl. ¶ 9. Stündenglass branded products embody a painstaking attention to detail, which is evident in many facets of authentic Stündenglass branded products. Compl. ¶ 9. It is precisely because of the unyielding quest for quality and unsurpassed innovation that Stündenglass branded products have a significant following and appreciation amongst consumers in the United States and internationally. Compl. ¶ 9.

As a result of the continuous and extensive use of the trademark "STÜNDENGLASS," GS was granted both valid and subsisting federal statutory and common law rights to the Stündenglass trademark. Compl. ¶ 10

The Plaintiff has used the Stündenglass Marks in commerce throughout the United States, continuously, since 2020, in connection with the manufacturing of glass infusers and accessories.

Compl. ¶ 13.

The Stündenglass Marks are distinctive to both the consuming public and the Plaintiff's trade. GS's Stündenglass branded products are made from superior materials. The superiority of Stündenglass branded products is not only readily apparent to consumers, but to industry professionals as well. Compl. ¶ 14.

The Stündenglass Trademarks are exclusive to GS and appear clearly on GS's Stündenglass Products, as well as on the packaging and advertisements related to the products. Compl. ¶ 15. GS has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting and protecting these Trademarks. Compl. ¶ 15. As a result, products bearing GS's Stündenglass Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from GS. Compl. ¶ 15.

GS's Stündenglass Products have become some of the most popular of their kind in the world and have also been the subject of extensive unsolicited publicity resulting from their high-quality and innovative designs. Compl. ¶ 16. Because of these and other factors, the GS brand, the Stündenglass brand, and GS's Stündenglass Trademarks are famous throughout the United States. Compl. ¶ 16.

Since 2020, GS has worked to build significant goodwill in the Stündenglass brand in the United States. GS has spent substantial time, money, and effort in developing consumer recognition and awareness of the Stündenglass brand, via point of purchase materials, displays, through their websites, attending industry trade shows, and through social media promotion. Compl. ¶ 17.

In fact, the Stündenglass Products have been praised and recognized by numerous online

publications, as well as publications directed to the general public. Compl. ¶ 18.

At the time of this Complaint, the Plaintiff was the owner of federally registered and common law trademarks. The following is a list of the Stündenglass trademarks:

    a.    U.S. Trademark Registration Number 6,633,884 for the standard character mark "Stündenglass" in association with goods further identified in registration in international class 011.

    b.    U.S. Trademark Registration Number 6,174,292 for the design plus words mark "S" and its logo in association with goods further identified in the registration in international class 034.

    c.    U.S. Trademark Registration Number 6,174,291 for the standard character mark "Stündenglass" in association with goods further identified in registration in international class 034.

    B.    *The Stündenglass marks are Counterfeiting Target.*

GS sells its products under the Stündenglass Marks to authorized stores in the United States, including in Illinois. GS has approximately 3,000 authorized stores in the United States selling its products. As such, Stündenglass branded products reach a vast array of consumers throughout the country. Compl. ¶ 20.

It is because of the recognized quality and innovation associated with the Stündenglass Marks that consumers are willing to pay higher prices for genuine Stündenglass products. For example, a Stündenglass brand glass infuser is priced at $599.95, while a non-Stündenglass branded product is also being sold for up to $600, with a range of $199 to $600. Compl. ¶ 21.

    C.    *Defendant's Infringing Conduct and Failure to Litigate.*

The Defendants have engaged in continuous and systematic business in Illinois and derive substantial revenue from commercial activities in Illinois. Specifically, the Defendants have engaged in the unlawful manufacture, retail sale, and/or wholesale sales of counterfeit

Stündenglass branded glass infusers and related parts. Compl. ¶ 6.

The Defendants have sold goods with marks allegedly with Trademarks registered to the Plaintiff. Compl. ¶ 25-26. The Defendants' acts constitute willful trademark infringement. Compl. ¶ 43. The Defendants' infringing acts as alleged herein have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Counterfeit Goods sold by the Defendants. Compl. ¶ 42-43.

The Defendants have failed to respond to the Complaint or otherwise appear in this action.

**3.     Default Judgment Should Be Awarded Against the Defendant.**

Since the Defendants have not responded to the Complaint or otherwise appeared in the instant action, the Plaintiff cannot continue to litigate this case on the merits. As such, if default judgment is not granted, Plaintiff will be left with no recourse for its injuries to its reputation and business caused by Defendants' illegal counterfeiting activities.

To prevail on a trademark infringement claim under 15 U.S.C. § 1114, a plaintiff must prove that a Defendants used, without the consent of the registrant, "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark: which is likely to cause confusion, or to cause mistake, or to deceive." Plaintiff must demonstrate "(1) the Plaintiff have a protectable trademark, and (2) a 'likelihood of confusion' will exist as to the origin of the plaintiff's products." *International Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1084 (7th Cir. 1988).

The Plaintiff has adequately alleged the first element because it has registered the trademarks at issue, each of which is incontestable. *See* Compl. ¶10-11. These incontestable registrations are "conclusive evidence" that the trademarks are valid and owned by the Plaintiff. 15

U.S.C. § 1115(b). Stündenglass Marks are registered with the USPTO. [Trademark registration certificate is attached and marked as Exhibit J.]

In determining if a likelihood of confusion exists, the Seventh Circuit Court of Appeals identified relevant seven factors: (1) the similarity between the marks; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree and care likely to be exercised by consumers; (5) the strength of the mark; (6) any actual confusion; and (7) the intent of the Defendants to "palm off" his product as that of another. *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 642 (7th Cir. 2001). Based on the deemed-admitted allegations of the Amended Complaint, all of these factors favor Plaintiff. "Where, as here, 'one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion.' *Luxottica Group S.p.A., et al. v. Light In The Box Limited*, 2016 U.S. Dist. LEXIS 144660, at *24 (N.D. Ill. Oct. 19, 2016) (citing *Microsoft Corp. v. Rechanik,* 249 F. App'x 476, 479 (7th Cir. 2007))." *Monster Energy Co. v. Peng*, No. 17-cv-414, at *8 (N.D. Ill. Oct. 23, 2017).

Increased damages may be awarded for "willful" counterfeiting - *i.e.*, where the Defendants acted with actual knowledge or reckless disregard of the counterfeiting. *See Kepner-Trequoe*, *Inc*. *v*. *Vroom*, 186 F.3d 283, 288 (2d Cir. 1999) ("The standard for willfulness is whether the Defendants had knowledge that [his] conduct represented infringement or perhaps recklessly disregarded the possibility." (internal quotation marks and citations omitted). Further, when determining damages pursuant to the Lanham Act, many courts "treat a default as evidence of willfulness." *Rolls-Royce PLC v*. *Rolls-Royce USA*, *Inc*., 688 F. Supp. 2d 150, 157 (E.D.N.Y. 2010) (collecting cases); *see also Tiffany (NJ) LLC*, *v*. *Dong*, No. 11cv2183 (GBD) (FM), 2013 WL 4046380, at *5 (S.D.N.Y. Aug. 9, 2013) (report and recommendation) (finding that "by virtue

6

of their default, [defendant] has admitted that they acted knowingly and intentionally); *Sream, Inc. v. Khan Gift Shop, Inc.*, 15cv02091 (KMW) (DF), at *10 (S.D.N.Y. Feb. 23, 2016).

**4.      Plaintiff is Entitled to Statutory Damages of $150,000.00.**

The Defendant's acts constitute willful trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114. Moreover, Defendant's acts constitute false designation of origin which is likely to cause confusion and mistake as it will deceive consumers as to the source or origin of such goods or sponsorship or approval of such goods by Plaintiff.  As a result, the elements described by the court have been satisfied and statutory damages must be awarded for both willful trademark infringement and false designation of origin. The Lanham Act, 15 U.S.C. § 1051 *et seq*., provides that a plaintiff may obtain actual damages or - at the plaintiff's option - statutory damages for trademark infringement or counterfeiting, *see* 15 U.S.C. § 1117. The statute also allows for the recovery of costs. *See id*. § 1117(a).

"Courts commonly find statutory damages appropriate in default judgment cases because the information needed to prove actual damages is within the infringers' control and is not disclosed." *Deckers Outdoor Corp. v. Does 1-55*, No. 11 C 10, at *8 (N.D. Ill. Oct. 14, 2011)(citing *Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874 (S.D. Ohio 2007); *Chanel, Inc. v. French*, No. 05-61838, 2006 WL 3826780, *2 (S.D. Fla. Dec. 27, 2006); *PetMed Express, Inc. v. MedPets.Com*, Inc., 336 F. Supp. 2d 1213, 1220 (S.D. Fla. 2004); *Tiffany Inc. v. Luban*, 282 F. Supp. 2d 123, 123 (S.D.N.Y. 2003); and *Philip Morris USA, Inc. v. Castworid Prods., Inc*., 219 F.R.D. 494 (CD. Cal. 2003).

GS Holistic, LLC, is the exclusive licensee of the Stündenglass Mark in the United States. The Defendants did not have the Plaintiff's consent to sell products that are not genuine Stündenglass goods. The Plaintiff has been damaged by the Defendants' acts because those acts

were committed with the intent to trade on the goodwill of the Stündenglass Marks, cause confusion and deception in the marketplace, and divert potential sales of GS Holistic's glass infusers to the Defendant. Plaintiff specifically point to trademarks including but not limited to (1) U.S. Trademark Registration Number 6,633,884 for the standard character mark "Stündenglass" in association with goods further identified in registration in international class 011. (2) U.S. Trademark Registration Number 6,174,292 for the design plus words mark "S" and its logo in association with goods further identified in the registration in international class 034. (3) U.S. Trademark Registration Number 6,174,291 for the standard character mark "Stündenglass" in association with goods further identified in registration in international class 034. (4) As well as Common law and unregistered state law rights in the following variants of the Stündenglass marks.

   A. *The Fact the Glass Infuser Was a Counterfeit Supports Higher Statutory Damages*

   Defendants sold in commerce Counterfeit Goods using reproductions, counterfeits, copies and/or colorable imitations of one or more of the Stündenglass Marks." In fact, the Defendants sold a glass infuser with the fake Stündenglass Trademark, which is in fact a counterfeit. The Defendants used images and names identical to the Stündenglass Marks, to confuse customers and aid in the promotion and sales of counterfeit goods under the infringing mark. The Defendant's use of the Stündenglass Marks includes importing, advertising, displaying, distributing, selling, and offering for sale unauthorized copies of Stündenglass branded products. The Defendant's offering to sell, selling, and importing the counterfeit goods bearing the infringing mark in this manner was and is likely to cause confusion or to cause mistake and deceive consumers who purchase the counterfeit goods. [Folkerts Aff. at ¶ 12]. The Lanham Act permits courts to award higher statutory damages in counterfeiting cases than in cases where the infringing mark, while confusingly similar, does not meet the definition of "counterfeit."

Under the statute, the use of a "counterfeit mark" is defined to mean either the unauthorized use of a federally registered trademark, *id*. § 1116(d)(1)(b)(i), or the use of "a spurious designation that is identical with, or substantially indistinguishable from" a registered mark, *id*. § 1116(d)(1)(b)(ii). Further, a defendant is considered to have engaged in counterfeiting when it uses "an original mark" of a party, in a manner "that is likely to deceive the public as to its origin.'" *See Leviton Mfg. v. Fastmac Performance Upgrades, Inc.*, No.13cv01629 (LGS) (SN), 2014 WL 2653116 (S.D.N.Y. Feb. 28 2014); *Sream, Inc. v. Khan Gift Shop, Inc.*, 15cv02091 (KMW) (DF), at *9-10 (S.D.N.Y. Feb. 23, 2016). Defendants traffic in counterfeit Stündenglass products using the original mark.

### B. Defendant's Willfulness Supports Higher Damages

When determining damages pursuant to the Lanham Act, many courts "treat a default as evidence of willfulness." *Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150, 157 (E.D.N.Y. 2010) (collecting cases); *see also Tiffany (NJ) LLC, v. Dong*, No. 11cv2183 (GBD) (FM), 2013 WL 4046380, at *5(S.D.N.Y. Aug. 9, 2013) (report and recommendation) (finding that "by virtue of their default, [defendant] has admitted that they acted knowingly and intentionally, or at least with a reckless disregard for, or willful blindness to, [plaintiff's] rights"); *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1101 (N.D. Cal. 2014)("An allegation of willful trademark infringement is deemed true on default" citing *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir.2008)); See also *Sream, Inc. v. Khan Gift Shop, Inc.*, 15cv02091 (KMW) (DF), at *10-11 (S.D.N.Y. Feb. 23, 2016)(same); *Sream, Inc. v. Smoke Scene, Inc.*, 15-CV-5185 (VEC) (RLE), at *9 (S.D.N.Y. Nov. 28, 2016)(same citing *North Face Apparel Corp v. Moler*, 12 Civ. 6688 (JGK) (GWG), 2015 U.S. Dist. LEXIS 93133, *14 (S.D.N.Y. July 16, 2015).

Plaintiff is aware that in the copyright context some Courts have hesitated "to find willful infringement 'based solely on a default judgment, without additional, independent evidence of egregious conduct.'" *Malibu Media, LLC v. Funderburg*, No. 1:13-cv-02614, at *7 (N.D. Ill. Apr. 24, 2015) citing *PHE Inc. v. Does 1-122*, 2014 WL 1856755, at *3 (N.D. Ill. May 7, 2014) and Pamela Samuelson, Tara Wheatland, *Statutory Damages in Copyright Law: A Remedy in Need of Reform*, 51 Wm. & Mary L. Rev. 439, 505-506 (2009). However, in this case, Plaintiff has offered more than the mere ISP evidence that Malibu Media offered in its pornography-download cases. Plaintiff has hired an investigator and provided pictures of the infringing sale. Plaintiff has provided much more than circumstantial evidence that parties seeking damages for the downloading of a pornographic film can demonstrate. Plaintiff has direct evidence that Defendants are trafficking in counterfeit goods with notorious suppliers selling knockoffs from China.

Plaintiff has also offered a sworn certification going to damages and the loss of value created by Defendants' trafficking in counterfeit goods. [See Exhibit B]. Plaintiff has demonstrated a significant loss of income in the millions of dollars due to counterfeiting. As noted in the Samuelson and Wheatland article, the term "willful" clearly applies to counterfeiters. *See* 51 Wm. & Mary L. Rev. at 459.

There are substantial differences also between a consumer that downloads a pornographic film for personal enjoyment and a business that traffics in counterfeit goods. A consumer who downloads films makes no profit from the sale of the plaintiff's intellectual property. A consumer who downloads films does not harm the goodwill of the plaintiff by selling an inferior product. A consumer who downloads films does not create confusion in the marketplace by selling a famous brand product for a lower price. This case targets profit-seeking counterfeiting operators, not pleasure-seeking-consumer Defendants.

Also, "Willful infringement may be attributed to the defendant's actions where he had knowledge that his conduct constituted infringement or where he showed a reckless disregard for the owner's rights." *Luxottica Group S.p.A. v. Chen*, 2017 WL 836228, at *2 (N.D. Ill. Mar. 2, 2017). Knowledge need not be proven directly but can be inferred from a defendant's conduct. *Monster Energy Co*. at *11. Defendants are not authorized dealers of Stündenglass products. *See* Folkerts Aff. The fact that Defendants did not purchase the products from GS Holistic provides evidence of an inference that Defendants had knowledge that the products were counterfeit. *Id.* Defendants are in the business of selling tobacco products including glass infusers and thus it can be inferred as well that they have knowledge of the recognition and famous status of the Stündenglass brand and trademark in the smoking products market. [See Exhibits B].

Moreover, Defendants were specifically on notice that Plaintiff would seek a total of at least $150,000.00 in statutory damages in the Complaint. Defendants chose not to defend this action with knowledge that Plaintiff could seek up to $150,000.00 in statutory damages.

      C.     *Comparable Statutory Damage Awards in Counterfeiting Cases Generally.*

It is not unrealistic to infer that an individual and a business trafficking in counterfeit goods might not want to come to federal court to defend such allegations. Under 18 U.S.C. § 2320, trafficking in counterfeit goods is a crime punishable against an individual by up to 10 years imprisonment and a fine up to $2,000,000. The law provides for a fine of up to $5,000,000 for a corporation. The failure to come to court to defend the allegations against them provides more evidence of willfulness. In effect, Defendants have exercised their rights to remain silent. But of course, such a decision results in an adverse inference in civil proceedings. See *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 389 (7th Cir. 1995).

11

Because the Defendants have refused to defend it is not possible for GS Holistic to establish exact damages with certainty. Plaintiff was unable to discover the number of counterfeit Stündenglass products that Defendants imported and sold. Where, for example, a defendant's refusal to cooperate in discovery creates uncertainties regarding the size of its counterfeiting operation, it may be appropriate to resolve such uncertainties against the defendant. *See Sara Lee*, 36 F. Supp. at 170. Similarly, where a defendant has engaged in willful misconduct, increased damages may be necessary to deter that defendant from future misconduct. *Sream, Inc. v. Khan Gift Shop, Inc.*, 15cv02091 (KMW) (DF), at *12-13 (S.D.N.Y. Feb. 23, 2016); *FitzgeraldPub. Co., Inc. v. Baylor Pub. Co.*, 807 F.2d 1110, 1117 (2d Cir. 1986)); *Sara Lee*, 36 F. Supp. at 166. These factors may bear upon one another. Defendants have engaged in the sale of at least one counterfeit unit and have traded in several more Stündenglass counterfeit products.

While actual damages to Plaintiff may not be calculated with exact certainty, an assessment of damages has been completed by Plaintiff GS Holistic. Christopher Folkerts, Chief Executive Officer of GS Holistic, states that GS Holistic is seeking only a fraction of the actual losses to its business from counterfeiting and that damages of $150,000.00 are reasonable since the actual damages to the business are far in excess of this amount. [See Exhibit B].

Further, in *Chi-Boy Music v. Charlie Club, Inc.*, the Seventh Circuit Court of Appeals found that Court has wide discretion in assessing the amount to award but should consider such factors as "the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent to future [trademark] infringement." 930 F.2d 1224, 1230 (7th Cir. 1991) (quoting *F.E.L. Publ'ns v. Catholic Bishop of Chicago*, 754 F.2d 216, 219 (7th Cir. 1985)). Based on the discretion this Court is given in Lanham Act cases such as this and the damages assessment of GS Holistic, the amount requested is appropriate, and

well within the discretion of the Court to award. This amount not only reflects actual damages suffered by Plaintiff, but also sends an unequivocal message to the industry that counterfeiting will not be tolerated.

Here, the Defendants has infringed Plaintiff's trademarks with the Registration Numbers 6,633,884, 6,174,292 and 6,174,291, justifying $150,000.00 ($50,000.00 per mark) in statutory damages. *See, e.g., All-Star Marketing Group*, *LLC v*. *Media Brands Co*., *Ltd*., 775 F. Supp. 2d 613, 624-25 (S.D.N.Y. 2011) (collecting cases where Courts have issued awards ranging from $25,000 to $250,000 per infringed mark, "where the Defendants willfully infringe[d] on the plaintiff's mark"); *See also Sream, Inc. v. Hanoun*, 2016 WL 11002361, at *4 (C.D. Cal. Oct. 28, 2016) (finding $50,000 to be reasonable statutory award for willful conduct on evidence of one product sold); and *Sream, Inc. v. Elgawly*, 2016 WL 4967710, at *3 (C.D. Cal. Sept. 14, 2016) (awarding statutory damages in the amount of $50,000.01 for willful conduct and evidence of one product sold).

Some courts in this District have awarded enormous amounts for statutory damages in counterfeiting cases. See *Deckers Outdoor Corp.* at *10 (awarding $750,000 in statutory damages for a counterfeit mark citing to *The Gen. Council of the Assemblies of God v. The Ranger Supply Store, Inc. et al.,* No. 10 C 07050 (N.D. Ill. June 29, 2011) which awarded the same amount). In *Monster Energy Co.* at *12, $100,000 was awarded for willful counterfeiting of the MONSTER ENERGY brand for each product sold for a total of $600,000 in statutory damages. The Stündenglass brand, like the MONSTER ENERGY brand, has achieved strong brand value and is a famous mark in its industry.

**5.     Plaintiff is seeking statutory damages in an amount consistent with other awards made in GS Holistic cases. (See Exhibit C, D, E, F, G, H, and Exhibit I hereto).**

The amount of statutory damages awarded in this case is in line with other awards made in

13

Stündenglass cases, most of which are pending in California and Florida. Attached as Exhibit C is a copy of the judgment in *GS Holistic, LLC. v. Envirocure, LLC. and , Hassan Abid* (22-cv-60463-BLOOM/Valle) for $151,147.89 in statutory damages. Attached as Exhibit D is a copy of the judgment in *GS Holistic, LLC. v. One Stop Vape et al* (2:22-cv-04628-SVW-AGR) for $225,000 in statutory damages and $1,482 in costs. Attached as Exhibit E is a copy of the judgment in GS Holistic, LLC. v. Cali Smoke Depot LLC et al (2:22-cv-06679-SPG-KS) for $150,000 in statutory damages and $1,0999.86 in costs. Attached as Exhibit F is a copy of the judgment in GS Holistic, LLC. v. Bellair Cigarettes Inc et al One Stop Vape et al (2:22-cv-06363-GW-MRW) for $150,000 in statutory damages and $955.69 in costs. Attached as Exhibit G is a copy of the judgment in GS Holistic, LLC. v. Pyramids Wholesale et al (2:22-cv-04632-SPG-RAO) for $300,000 in statutory damages and $1,462 in costs. Attached as Exhibit H is a copy of the judgment in GS Holistic, LLC. v. Smoke Unlimited et al (1:22-cv-21254-FAM) for $250,000 in statutory damages and $563.41 in costs.

Moreover, a court in this district has recently awarded statutory damages in the amount of $150,000 in a Stündenglass case. Attached as Exhibit I is a copy of judgment in GS Holistic, LLC. v. Abood Enterprise et al (1:22-cv-06161) for $150,000 in statutory damages and $817 in costs.

WHEREFORE, Plaintiff requests that this Court enter judgment in favor of Plaintiff against Defendants, JOHNNY VAPES, INC d/b/a JOHNNY VAPES INC and AYAZ AHMED, and award statutory damages in the amount of $150,000.00.

                                                  Respectfully submitted,

                                                  */s/ Ryan S. Fojo*
                                                  Ryan S. Fojo
                                                  IL Bar # 6305940

                                                The Ticktin Law Group
                                                875 North Michigan Avenue
                                                31st Floor Chicago, IL, 60611
                                                Serv606@LegalBrains.com
                                                Telephone: 561-232-2222
                                                *Attorney for the Plaintiff*